UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Huff and Chaney
Argued by videoconference

RONELLE KENNETH HARRIS

MEMORANDUM OPINION* BY
v.      Record No. 0746-22-1          JUDGE VERNIDA R. CHANEY
                                       NOVEMBER 28, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Ronelle Kenneth Harris of aggravated sexual battery and taking indecent

liberties while in a custodial relationship with a child.  He was sentenced to seventeen years of

imprisonment, with ten years and seven months suspended.  Harris asserts that the circuit court

erred by (1) denying his motion to strike a juror for cause and (2) denying his motion to set aside the

verdicts because the Commonwealth failed to disclose evidence required by *Brady v. Maryland*, 373

U.S. 83 (1963).  Finding no error, this Court affirms the circuit court's judgment.

BACKGROUND

We review the facts in the light most favorable to the Commonwealth, who prevailed

below.  *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018).  We limit our recitation of the

procedural background and facts to those needed to resolve Harris's assignments of error.

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. *The voir dire*

When it started *voir dire*, the circuit court questioned the prospective jurors to assess their impartiality. The jurors acknowledged both that the defendant is presumed innocent and is not required to produce evidence. And they affirmed that they could decide the case "based solely on the law and evidence."

The Commonwealth then explored the prospective jurors' comfort with the facts underlying Harris's charges. The Commonwealth informed the jurors that Harris was charged with sexually abusing an 11- or 12-year-old girl. None of the jurors indicated that this would affect their ability to impartially hear the evidence, even if they had similarly aged children or grandchildren. Harris then asked the jurors, "Do you believe that a child would probably not lie about a sexual assault occurring?"

Juror 2200 responded, "I don't know, but I -- I mean, without having the facts and without hearing it right now, I would have a tendency to think that I would believe a child." She then went on to affirm her ability to impartially consider all the evidence and said she would not "just stick with that premise[.]" Juror 2200 also said she would want to hear from Harris and would have a "lingering question" if he did not testify. But neither she nor the rest of the venire said they would hold it against Harris or "feel that he is hiding or that he is probably guilty" if he did not testify.

Harris then questioned Juror 2200 on individual *voir dire*. She explained that she had a visible reaction when hearing the nature of the charges because she had a ten-year-old granddaughter and found that assaulting or harming a child was upsetting. But she went further, explaining, "I'm not saying that that's going to cause me to have judgment in either direction" and "I feel like animals and children are sort of exempt from, you know, judgment in that respect." Juror 2200 said she believed that children are vulnerable, but she "wouldn't pass

judgment on a particular case or incident without hearing all the components, all the factors involved." She then affirmed her ability to impartially consider the evidence and follow the law, even if she did not agree with the law.

Harris moved to strike Juror 2200 for cause, arguing that she showed bias and a tendency to believe children. He also pointed out that she described children as a "vulnerable class." The circuit court denied the motion, finding that Juror 2200 could impartially and fairly apply the law to the facts of the case.

## II. The trial

T.C.,[1] who was 14 years old at the time of trial, testified that Harris inappropriately touched or exposed himself to her on 6 separate occasions. He did this between October 2018 and June 2019 when Harris resided with T.C. and her mother, whom he was then dating. When T.C.'s mother was not home, Harris would supervise and provide transportation for T.C. T.C. said that Harris was "like a father figure" to her.

T.C. testified about her abuse by Harris. Once, in October 2018, Harris grabbed her breasts under her shirt while she slept on a couch. He then pulled down her shorts and rubbed the outside of her vagina. In June 2019, Harris grabbed T.C.'s "butt," removed her pants, turned her over, and touched her vagina with his exposed penis.

In the summer and fall of 2019, T.C. told her friends, and eventually her mother, about these incidents. She told her friend Y. that summer. She told her boyfriend A.C. and friend A.O. in October. Then T.C. told her mother by text in November.[2]

---

[1] We use initials to protect the juvenile victim's privacy.

[2] This revelation came in the course of a conversation where T.C.'s mother chastised T.C. for making an unscheduled visit to A.C.

Detective Amanda Robey then testified about interviewing Harris concerning T.C.'s allegations. The Commonwealth played the video recording of that interview for the jury. During the interview, Harris denied abusing T.C., but admitted to inappropriate incidences of "light rubbing" and "consensual touching."

Detective Robey told Harris that T.C. kept a diary implicating him in her abuse. In truth, Detective Robey did not know whether T.C. even kept a diary. Detective Robey explained to the jury that this was an interview technique to get an incriminating response from Harris. For the same reason, she insinuated that T.C. had initiated the inappropriate contact and downplayed Harris's culpability.

Harris's niece testified in his defense. She told the jury that when she spoke with T.C. a few weeks after Harris's arrest, T.C. said it was A.C., not Harris, who touched her inappropriately. Harris's niece explained that T.C. was jealous because Harris had a baby by someone else.

After the evidence closed, Harris moved to strike. He argued that the evidence was insufficient to sustain his convictions because T.C.'s testimony was incredible and because her statements at trial and in the investigation were inconsistent. The circuit court denied his motion, and the jury convicted Harris of both offenses.

Harris later moved to set aside the verdict. He argued that investigations by the Attorney General and Virginia Beach police concluded that Detective Robey used false certificates of analysis to obtain evidence against suspects. These investigations revealed five instances of Virginia Beach police using those certificates to coerce confessions. Harris further asserted that, several months after his interview with Detective Robey, she used a falsified certificate to question a suspect in another case. Harris argued that the Commonwealth violated *Brady* by failing to disclose this practice, which impaired his ability to impeach Detective Robey at trial.

But Harris did not contend and produced no evidence indicating that Detective Robey used a false certificate when interviewing him.

The circuit court denied Harris's motion, concluding that the police did not use false documents to interrogate him. The court found further that the playing of the recording precluded Detective Robey from misleading the jury about Harris's statements during the interview. The court noted that Harris was able to cross-examine Detective Robey and probe into her veracity. Thus, the circuit court held that Harris did not show how this evidence would have helped him at trial—he was therefore not prejudiced by any such failure to disclose it.

Harris now appeals.

## ANALYSIS

### *I. The circuit court did not err by failing to strike Juror 2200.*

Harris argues that the circuit court erred in refusing to strike Juror 2200 for cause based on her responses during *voir dire*. Whether a juror could be fair and impartial, such that they may be seated, is a question of fact. *Taylor v. Commonwealth*, 61 Va. App. 13, 24 (2012). We defer to the circuit court's resolution of that question unless Harris establishes a manifest error amounting to an abuse of discretion. *Id.* at 23-24. Finding no abuse of discretion, this Court affirms.

Defendants have a constitutional right to be tried by an impartial jury. *Id.* at 22. If there is a reasonable doubt as to a juror's impartiality, the circuit court should exclude them. *Id.* at 23. The question is whether the potential juror "can lay aside [their] preconceived views and render a verdict based solely on the law and evidence presented at trial." *Id.* In answering this question, we view the juror's *voir dire* as a whole, rather than focus on "isolated statements." *Id.* at 24.

Harris contends that Juror 2200 "told the court that she was not indifferent to the cause." We disagree. At the beginning of *voir dire*, Juror 2200 acknowledged that a criminal defendant

- 5 -

is presumed innocent and need not produce any evidence in his defense. While Juror 2200 indicated a tendency to believe children making allegations of abuse, she later clarified that she would not adhere to that premise strictly and could fairly and impartially consider all the evidence. Juror 2200 indicated that the charges were "upsetting" to her because the case involved a vulnerable child of similar age to her grandchild. She nonetheless affirmed that she could base her decision upon the evidence and law provided by the circuit court.

In response to defense counsel's question about a defendant's choice not to testify, Juror 2200 said she would like to hear about the case from the defendant himself. She did not indicate that she would hold a defendant's choice not to testify against him.

Considering her *voir dire* as a whole, the record shows that Juror 2200 could decide the case based on the law and evidence introduced at trial. This Court finds no manifest error in the circuit court so concluding because the circuit court's finding that Juror 2200 was able to serve as a fair and impartial juror is not plainly wrong and is supported by the record.

*II. The circuit court did not err in refusing to set aside the verdict on Harris's allegation of a Brady violation.*

Harris argues the Commonwealth should have disclosed information concerning Detective Robey's use of false information during interrogations. He asserts that *Brady v. Maryland* mandated this disclosure. Alleging a *Brady* violation presents the circuit court with a mixed question of law and fact. *See Walker v. Kelly*, 589 F.3d 127, 140 (4th Cir. 2009). We defer to the circuit court's findings of fact absent clear error. *Id.* But we review its legal conclusions without deference. *Id.* The circuit court committed no error here.

Due process requires the Commonwealth to disclose to the defendant favorable evidence "that is material to guilt or punishment." *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019). Here, Harris had the burden to establish that the information withheld by the

Commonwealth prejudiced him at trial.[3] *See Commonwealth v. Tuma*, 285 Va. 629, 634-35 (2013). Prejudice here does not mean that introducing the evidence would have likely resulted in a different verdict. *See Bly v. Commonwealth*, 280 Va. 656, 662 (2010). Rather, we ask whether Harris still received a fair trial without that evidence. *See id.* at 663.

The Commonwealth's failure to disclose that Detective Robey wrongly used false information in unrelated cases did not deprive Harris of a fair trial. The record does not show, and Harris does not argue, that Detective Robey or anyone else used falsified certificates while investigating him in this case. The failure to disclose the investigations of Detective Robey's coercive interrogation tactics in other cases was not a *Brady* violation.

Indeed, Harris cross-examined Detective Robey on her investigation tactics. That cross-examination included her admissions that she falsely told Harris that T.C.'s diary implicated him and that she insinuated that T.C. instigated the sexual touching. She testified that these tactics were tools of her trade that she uses during interrogations to obtain admissions from suspects. And the jury observed and heard those tactics when it saw the video of her interview of Harris.

Finally, the Commonwealth adduced sufficient evidence of Harris's guilt from T.C., notwithstanding any defects in Detective Robey's testimony. Harris was able to cross-examine T.C. in front of the jury. It was committed to the jury's discretion to weigh T.C.'s testimony and assess her credibility. *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019). The jury acted within that discretion in believing T.C.

---

[3] *Brady* also requires defendants to prove that the withheld evidence (1) is favorable and (2) was willfully or inadvertently suppressed by the State. *Mercer v. Commonwealth*, 66 Va. App. 139, 146 (2016). The circuit court resolved Harris's argument by assessing whether the Commonwealth's failure prejudiced him. We likewise restrict our review to this issue.

Harris failed to satisfy his burden to show that he was prejudiced at trial by the Commonwealth's failure to disclose the investigations against Detective Robey. Therefore, the circuit court did not err in denying Harris's motion to set aside the verdict.

## CONCLUSION

For all these reasons, we do not disturb the judgment of the circuit court. Therefore, this Court affirms the circuit court's judgment.

*Affirmed.*