Present:  Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

LINDSAY ALAN BLY                           OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 092064                   November 4, 2010

COMMONWEALTH OF VIRGINIA

              FROM THE COURT OF APPEALS OF VIRGINIA


     This appeal from two convictions of drug distribution

presents a single question:  whether the circuit court erred

in failing to grant the defendant a new trial because of the

Commonwealth's failure to make pre-trial disclosure of

exculpatory evidence.  The Commonwealth assigns cross-error to

the Court of Appeals' failure to hold that the non-disclosed

evidence was neither admissible nor such as to lead to

evidence that would have been admissible.

                    Facts and Proceedings

     Applying familiar principles, we will state the evidence

in the light most favorable to the Commonwealth, the

prevailing party at trial.  In the spring of 2004, the

Rockbridge Regional Drug Task Force conducted a series of drug

"buys" though Robert Hoyle, a paid confidential informant.

Hoyle's evidence led to two indictments of Lindsay Alan Bly in

the Circuit Court of the City of Buena Vista.  At a bench

trial, Bly was convicted of possession with intent to

distribute an imitation controlled substance on May 17, 2004

(the May Offense) and possession with intent to distribute methamphetamine on June 3, 2004 (the June offense).

With respect to the May offense, task force members testified that their target was Bly, who lived in a ground-floor apartment in a building at 1805 Walnut Avenue in Buena Vista and was suspected of selling controlled substances there.  In preparation for the "buy," they met with Hoyle, searched him thoroughly to ensure that he had no money or controlled substances with him, gave him $50 in marked money and drove him to an area behind 1805 Walnut Avenue.  One of the members of the task force testified that he saw Hoyle walk up onto the back porch of the building and greet Bly, who was standing there with his wife.  The three then entered the back door of the building.  Hoyle emerged alone about three minutes later, re-entered the vehicle with the task force members, and they drove away.  Hoyle produced a small bag of white powder that looked like powder cocaine but turned out on subsequent analysis to contain no controlled substance.  Searched again, Hoyle had no money on his person when he returned to the officers' car.  Hoyle testified that he purchased the bag of white powder from Bly with the marked money and confirmed the other details of the officers' testimony.

With respect to the June offense, task force members testified that they met with Hoyle again on that date to

arrange for a methamphetamine "buy" from Bly. They thoroughly searched Hoyle to ensure that he had no money or controlled substances on his person, gave him $100 in marked money and drove him to an alley that led to 1805 Walnut Avenue. They saw Hoyle enter the back door, from which he emerged seven or eight minutes later. Hoyle produced a "baggie" containing a "pink, rock-like substance" that turned out on later analysis to consist of methamphetamine. Hoyle testified that he had purchased the "baggie" and its contents from Bly with the marked money. Hoyle was again searched after delivering the "baggie" to the officers and was found to be free of contraband.

The record reflects that Hoyle was equipped with a digital recording device for each of the purchase transactions, but no recording was offered at the trial by the Commonwealth as to either episode. Instead, Hoyle was called as a witness to provide a testimonial description of the actual purchase transactions – both of which took place indoors, beyond the view of the task force officers. Hoyle gave details about handing money to the defendant, conversations that allegedly took place, and receipt of the controlled substances.

At the conclusion of the trial on March 24, 2005, the circuit court found Bly guilty as charged under both

indictments but continued the case, leaving Bly free on bond and subject to supervision by the probation officer pending preparation of a pre-sentence report.

On March 6, 2006, nearly a year after the trial, Bly's counsel filed a motion for a new trial. No sentences had yet been imposed. Bly's motion asserted that his convictions were necessarily dependent upon Hoyle's credibility as a witness because there was no visual surveillance, visual or audio recording, fingerprint evidence, recovery of marked money, or other evidence to support Hoyle's account of his purchases from Bly. The motion further asserted that the chief investigator of the drug task force had been aware, more than four months before Bly's trial, that Hoyle had been giving the task force false accounts of his purchases of controlled substances.

Attached as an exhibit to Bly's motion was a copy of a letter from the Commonwealth's Attorney for Rockbridge County and the City of Lexington to another lawyer in a different case, written in response to a discovery motion. That letter acknowledged that Hoyle had claimed that he made drug "buys" from one Jeff Breeden on two dates, resulting in Breeden's indictment and arrest, but it was later found that Breeden had been incarcerated on both of those dates and could not have made the sales as Hoyle claimed. The Commonwealth's

4

Attorney's letter further acknowledged that on another occasion when Hoyle reported making a drug purchase from a suspect in Buena Vista, another member of the task force reported that he thought he had seen the suspect in a different location at the same time. Consequently, the suspect was not charged. The Commonwealth's Attorney's letter stated that from January through July of 2004 Hoyle made 83 controlled "buys" for the task force, for which he was paid a total of $4,281.70, plus $1,301.40 for his court appearances. Hoyle had a criminal record and had been found with a smoking device but was not charged with possession of marijuana in exchange for his services to the task force. Hoyle was only paid if he made a "buy" and turned contraband over to the task force.

Bly contended that he was entitled to a new trial because the foregoing information was exculpatory within the holding of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, that the information was in the Commonwealth's possession prior to Bly's trial, that the Commonwealth had a duty to disclose it to the defense but failed to do so, and that the defense had no means of discovering it in the absence of such disclosure because it did not become public until the Commonwealth's Attorney's letter described above was written, well after Bly's trial had ended.

On March 30, 2006, the circuit court heard argument on the motion for new trial and sentencing. The court took both matters under advisement and continued the case, again releasing Bly on supervised probation. On September 13, 2007, Bly's probation officer wrote to the court reporting that Bly was in violation of the terms of his probation in that he had repeatedly tested positive for marijuana use and had failed to complete several treatment efforts for his drug problem. On October 25, 2007, the court denied Bly's motion for a new trial and continued the case for sentencing. On December 13, 2007 the court entered an order imposing sentences of five years confinement on each of the two convictions, the sentences to run concurrently. All but seven months of the sentence was suspended subject to probation for five years after release.

Bly appealed his convictions to the Court of Appeals, presenting only the question whether the circuit court had erred in failing to grant him a new trial. By memorandum opinion dated January 13, 2009, a three-judge panel, with one judge dissenting, reversed the convictions and remanded the case for a new trial. Bly v. Commonwealth, Record No. 2948-07-3 (Jan. 13, 2009). The Commonwealth successfully petitioned the Court for a rehearing en banc. The full Court of Appeals, by a six-to-five majority, affirmed the judgment

6

of the circuit court.  Bly v. Commonwealth, 55 Va. App. 1, 3, 682 S.E.2d 556, 557 (2009).  We awarded Bly an appeal.  The Commonwealth assigned cross-error to the failure of the Court of Appeals to find that Bly had failed to establish the second requirement of the Brady test:  that the non-disclosed information was itself admissible evidence or would have led to evidence that was admissible.

### Analysis

The Commonwealth concedes, as it must, that the evidence Bly contends was exculpatory, was in the possession of the Commonwealth's agents prior to Bly's trial and that it was not disclosed.  The Commonwealth argues, however, and the Court of Appeals held, that Bly suffered no prejudice from the Commonwealth's failure to disclose it.  Bly, 55 Va. App. at 10, 682 S.E.2d at 561.  The Court of Appeals held that Bly suffered no prejudice because the trial judge, as trier of both law and fact, heard sufficient evidence to support a conviction even if the testimony of Hoyle were totally disregarded.  The Court of Appeals pointed to the testimony of three task force officers and Bly's own testimony that was inconsistent with theirs, thus impairing Bly's credibility. Id. at 10-13, 682 S.E.2d at 561-62.

In Workman v. Commonwealth, 272 Va. 633, 636 S.E.2d 368 (2006), we summarized the applicable principles of the Brady

7

doctrine as expressed in the opinions of the Supreme Court of

the United States:

> In Brady, this Court held that the suppression by
> the prosecution of evidence favorable to an accused
> upon request violates due process where the evidence
> is material either to guilt or to punishment,
> irrespective of the good faith or bad faith of the
> prosecution.  We have since held that the duty to
> disclose such evidence is applicable even though
> there has been no request by the accused, and that
> the duty encompasses impeachment evidence as well as
> exculpatory evidence.  Such evidence is material if
> there is a reasonable probability that, had the
> evidence been disclosed to the defense, the result
> of the proceeding would have been different.
> Moreover, the rule encompasses evidence known only
> to police investigators and not to the prosecutor.
> In order to comply with Brady, therefore, the
> individual prosecutor has a duty to learn of any
> favorable evidence known to the others acting on the
> government's behalf in this case, including the
> police.

Id. at 644, 636 S.E.2d at 374 (quoting Strickler v. Greene,

527 U.S. 263, 280-81 (1999)) (citations and quotation marks

omitted).

Most significantly, in the context of the present case,

we noted in Workman:

> The question is not whether the defendant would more
> likely than not have received a different verdict
> with the evidence, but whether in its absence he
> received a fair trial, understood as a trial
> resulting in a verdict worthy of confidence.  Kyles
> v. Whitley, 514 U.S. 419, 434 (1995).  A
> constitutional error occurs, and the conviction must
> be reversed, only if the evidence is material in the
> sense that its suppression undermines confidence in
> the outcome of the trial.  United States v. Bagley,
> 473 U.S. 667, 678 (1985).

8

. . . .

> In Kyles, the Supreme Court of the United States
> made several holdings concerning the test of
> materiality.  First, "a showing of materiality does
> not require demonstration by a preponderance that
> disclosure of the suppressed evidence would have
> resulted ultimately in the defendant's acquittal
> (whether based on the presence of reasonable doubt
> or acceptance of an explanation for the crime that
> does not inculpate the defendant.)"  Kyles, 514 U.S.
> at 434.  Second, materiality is not a sufficiency of
> the evidence test.  "A defendant need not
> demonstrate that after discounting the inculpatory
> evidence in light of the undisclosed evidence, there
> would not have been enough left to convict."  Id. at
> 434-35.  Third, a harmless error analysis is
> unnecessary once materiality has been determined.
> Id. at 435.  Fourth, suppressed evidence must be
> "considered collectively, not item by item."  Id. at
> 436.  Upon consideration of these factors, a
> reviewing court is charged with the responsibility
> of determining if the suppression of evidence
> "undermines confidence in the outcome of the trial."
> Bagley, 473 U.S. at 678.

272 Va. at 645, 636 S.E.2d at 374-75 (brackets and internal

quotation marks omitted).

In the present case, in view of (1) the Commonwealth's

failure to introduce the audio recordings Hoyle was equipped

to make of his dealings with Bly, (2) the lack of any other

evidence to corroborate Hoyle's testimony as to those

transactions, and (3) Hoyle's obvious pecuniary incentive to

fabricate drug "buys," the suppression of evidence that could

have led to a devastating impeachment of Hoyle's credibility

undermines confidence in the outcome of the trial.

9

In its analysis, the Court of Appeals incorrectly assumed that the circuit court, having been the trier of fact, would have convicted Bly based on the other evidence in the case even if Hoyle's testimony were entirely excluded.  When determining whether to grant a new trial because of a Brady violation, the court must take into consideration the use the defense may properly make of the non-disclosed information.  As we observed in Workman, in the Brady context such non-disclosed evidence may be, and often is, used to discredit an entire police investigation.  Id. at 647-48, 636 S.E.2d at 376.  The non-disclosed evidence "may not have been admissible for the truth of the matter asserted, but it was admissible for a different reason[:] to discredit the police investigation."  Id. at 646, 636 S.E,2d at 375.  See also Kyles, 514 U.S. at 445 (such evidence could have been used by the defense to attack the "thoroughness and even the good faith of the investigation").  The Court of Appeals' assumption overlooks the risk that impeachment of Hoyle, in discrediting the police investigation itself, might well have tainted the remaining evidence in Bly's case.

## Conclusion

The non-disclosed evidence here, as in Workman, could clearly have led to evidence admissible at trial for impeachment purposes.  It was withheld by the Commonwealth and

Bly was thereby prejudiced.  The result was such as to impair confidence in the outcome of the trial.  Workman, 272 Va. at 650, 636 S.E.2d at 375.  For these reasons, we will reverse the judgment appealed from and remand the case to the Court of Appeals with instruction to further remand the same to the circuit court for a new trial consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

11