COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Fulton and Ortiz
Argued at Richmond, Virginia


KYLE RAYMOND POTTS

                                             MEMORANDUM OPINION[*] BY
v.        Record No. 1146-22-2          CHIEF JUDGE MARLA GRAFF DECKER
                                                    JULY 2, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Kevin E. Calhoun for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General; Rebecca M. Garcia, Assistant Attorney General,
on brief), for appellee.


Kyle Raymond Potts appeals his convictions for four counts each of possession of a

controlled substance with intent to distribute and possession of a firearm while in possession of a

controlled substance with intent to distribute in violation of Code §§ 18.2-248 and 18.2-308.4.  He

contends the evidence was insufficient to prove he possessed the drugs.[1]  He also argues that the

prosecution failed to turn over material impeachment evidence.  We hold the trial court did not err,

and we affirm the appellant's convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The appellant initially also assigned error to the sufficiency of the evidence to prove a nexus between the firearms and the drugs, as necessary to support his convictions for possessing the items simultaneously.  On brief, however, he withdrew this assignment of error.  As a result, we do not consider it.

UNPUBLISHED

This case arose out of an investigation by the Chesterfield County Police Department that implicated the appellant in possessing a significant quantity of illegal drugs for distribution that were found in a Richmond apartment. Immediately after the appellant was convicted of the instant offenses, the Commonwealth turned over newly obtained evidence impeaching its primary law enforcement witness, Detective Robert Sprouse. This opinion details the facts relevant to the two issues on appeal—the sufficiency of the evidence and the failure to provide impeachment evidence.

## I. Investigation of the Appellant and the Evidence at Trial

Beginning in October 2019 and continuing into 2020, Detective Sprouse conducted a drug investigation of the appellant. In the course of that investigation, Sprouse had a confidential informant arrange meetings with the appellant. He also surveilled the appellant at his Chesterfield residence and a Richmond apartment building several times, both alone and with the help of other detectives. The investigation revealed that the appellant was frequenting apartment 104 but that it was not leased to him.

Sprouse used the evidence from the investigation to complete a probable cause affidavit regarding illegal drug distribution. As a result, he obtained search warrants for the appellant, his residence in Chesterfield County, and the Richmond apartment. Sprouse conducted additional surveillance of the Richmond apartment on the morning of April 15, 2020. After about two hours, the detective saw the appellant leave the building with a woman and drive away in a Ford Excursion he had previously been seen driving. Officers stopped the vehicle in Chesterfield County and executed the search warrants.

---

[2] On review, an appellate court considers the evidence and all inferences fairly deducible from the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial." *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020).

The search of the appellant and his Ford yielded $20,320 in cash, a pistol with an extended magazine, and two cell phones.

Detective Kevin Davis oversaw the search of the appellant's residence in Chesterfield. The police found boxes for two firearms, $85,000 in cash, and plastic baggies containing a powdery residue. The baggies were under the false bottom of a drink-mix container.

Detective R. Hughes oversaw the search of the Richmond apartment. Police found numerous items there that connected the appellant to the apartment. Evidence seized from the apartment included the appellant's firearms, drug packaging paraphernalia, and a significant quantity of four different controlled substances—fentanyl, methamphetamine, cocaine, and psilocybin.

Detective Sprouse testified as an expert about the drugs and paraphernalia found in the Richmond apartment. Sprouse provided specific testimony about the quantities and values of the various drugs, indicating that together, they had a street value of up to about $75,000. He opined that the combination and quantities of different drugs found in the Richmond apartment were inconsistent with personal use "by a lot" and "strongly support[ed]" that the appellant was a "high level narcotic[s] trafficker." The detective also noted the lack of food or a bed in the apartment, concluding these facts were "indicative" that the apartment was "for th[e] sole purpose of dealing drugs out of, or staying . . . temporarily, not living . . . comfortably."

The appellant testified in his defense. He denied that the drugs in the Richmond apartment were his. He claimed that he had dated the apartment's lessee and stored some of his belongings and had packages delivered there due to thefts from his Chesterfield residence. He suggested that his two-year relationship with the lessee had ended and he did not have access to the apartment during the time frame when the police surveilled and searched it. The appellant asserted that he continued to go to the Richmond apartment building for packages he had

- 3 -

delivered to that address. He further asserted that he possessed large sums of cash due to work he did for his former stepfather, Preston Brown, in the man's used-car and nightclub businesses.

The jury found the appellant guilty of the four counts of possessing different drugs with intent to distribute and the four related charges of possessing a firearm while in possession of each of those controlled substances with intent to distribute. The appellant was sentenced to one hundred years of incarceration with sixty-five years suspended.

## II. Impeachment Evidence and Post-Trial Motion

On February 23, 2022, the day after the appellant was convicted of the 2020 drug offenses, the prosecutor notified defense counsel of impeaching evidence about Detective Sprouse, the Commonwealth's primary witness. That evidence involved Sprouse's addition of information to several already-issued search warrants in an unrelated drug case. That behavior took place less than a week before the appellant's trial.

In response, defense counsel made a motion to set aside the verdict and for a new trial. The evidence at the hearing on the motion established the relevant details surrounding Detective Sprouse's involvement in the appellant's case and the unrelated matter involving the altered search warrants.

Detective Sprouse was the affiant for the three 2020 warrants in the appellant's case, although other officers assisted him with the execution of those warrants. On Monday, February 14, 2022, about a week before the appellant's Richmond drug trial, Detective Sprouse applied for seven search warrants in the relevant unrelated drug case. The supporting affidavits in the unrelated case contained all necessary information, but the warrants themselves were blank in the section for describing the "property, objects and/or persons" to be "searched for." In other words, while the affidavits were clear, the warrants did not indicate that the items sought were drugs, and the space for that information was blank. The magistrate signed the incomplete

- 4 -

search warrants without noticing the omissions. Two days later, on Wednesday, February 16, 2022, officers executed the search warrants in the unrelated case, found drugs, and made arrests.

On Thursday or Friday, February 17 or 18, 2022, Detective Sprouse noticed that the listing of the subject items (drugs) was missing from those warrants. Once he discovered the problem, Sprouse used a search warrant template and a printer to insert the missing information. The search warrant returns were then filed in the Chesterfield and Richmond Circuit Courts.

On Thursday, February 17 (the same day or the day before Detective Sprouse altered the unrelated warrants), the prosecutor in the appellant's case spoke to Sprouse for the final time in preparation for the appellant's February 22 trial. During that conversation, which lasted about fifty minutes, the prosecutor asked whether the detective had any information that might affect his credibility. Detective Sprouse denied that he did. At no time between that conversation and when Sprouse testified at trial the following week did he notify the prosecutor that he altered the unrelated search warrants or filed the returns for the altered warrants in the circuit courts.[3]

On Tuesday, February 22, 2022, the appellant was tried and convicted of the instant offenses in the Richmond Circuit Court. The prosecutor presented both lay and expert testimony from Detective Sprouse, whom the prosecutor described as "the lead detective" in the drug investigation.

Also on February 22, the Chesterfield County magistrate "became aware of the incomplete warrants" issued in the unrelated case the previous week and notified the police. On February 23, the day following the appellant's trial, Sergeants Ballentine and McLaughlin met with Detective Sprouse and learned that "information had been added" to the warrants after the magistrate issued them. Sprouse admitted "he had changed the originals and added" information

_____

[3] Detective Sprouse filed the Richmond altered-warrant return on the morning of the appellant's trial on Tuesday, February 22. Another officer filed the Chesterfield altered-warrant returns that morning at Detective Sprouse's request.

to each warrant regarding only the "items to be searched for." He told the sergeants, "I thought I was correcting a clerical error." They responded that "this [was] a bigger problem," and Sprouse "broke down in tears."

Later that same day—the day after the appellant's trial—the Richmond prosecutor notified defense counsel in the appellant's case of Sprouse's actions in the unrelated case.[4] Around the same time, Sprouse was placed on administrative leave.

Sergeant Ballentine, before testifying at the appellant's post-trial motion hearing, reviewed the evidence in the unrelated case and determined that the appellant was not involved in that case. Ballentine testified that Sprouse had a "stellar" reputation for truthfulness and veracity and that this reputation did not change based on his alteration of the search warrants in the unrelated case. Ballentine admitted seeing the statement the police chief issued—that the detective turned "a simple mistake" into "a profound credibility challenge."[5] He testified, however, that he believed Sprouse merely "made a mistake" that "d[id] not speak to his credibility." Ballentine confirmed that Sprouse did not put false information into the warrants and added only information contained in the affidavits that had not also been inserted into the appropriate blanks on the warrants.

---

[4] As a result of Detective Sprouse's addition of information to the unrelated warrants, the people arrested based on the drugs found while executing those warrants were released from jail. At the time of the hearing on the appellant's motion for a new trial, Sprouse was no longer employed by the department.

[5] The parties stipulated regarding statements issued by Chief of Police Colonel Jeffrey Katz and Chesterfield Commonwealth's Attorney Stacey Davenport after information surfaced about Sprouse's alteration of the warrants in the unrelated case. Colonel Katz's social-media post characterized Sprouse's actions as not only "a profound credibility challenge" but also "potentially illegal." An email authored by Davenport conveyed that Sprouse's actions "cause[d] great concern about his truth and veracity as a witness in criminal cases" and that her office would be "review[ing] any and all [such] cases."

The trial court denied the appellant's post-trial motion. It held first that knowledge of the impeachment evidence was not imputed to the Richmond prosecutor because Chesterfield Detective Sprouse was employed in a different jurisdiction and did not reveal the information before trial when specifically asked. Second, the court held that there was no "reasonable probability" that disclosure would have led to a different result at trial. It found the impeachment value was low due to the lack of a temporal connection between Sprouse's 2022 alteration of the unrelated warrants and his 2020 investigation of the appellant. It also reasoned that the detective's testimony "primarily just plac[ed]" the appellant at the Richmond apartment, which was "clearly . . . established anyway" because of his possessions found in the apartment. Finally, the court stated that it did not have "any loss of confidence in the outcome" of the trial because "[t]he cumulative impact of all of the evidence was too overwhelming."

ANALYSIS

The appellant raises two distinct challenges on appeal. First, he contests the sufficiency of the evidence to prove he possessed the illegal drugs. Second, he argues that the trial court erred by denying his post-trial motion challenging late disclosure of impeachment evidence.

I. Sufficiency of the Evidence

The appellant contends that the evidence was insufficient to prove he possessed the various illegal drugs found in the Richmond apartment.

In reviewing the sufficiency of the evidence on appeal, this Court views the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth, the prevailing party at trial. *See Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021). To do so, we "discard the evidence of the accused in conflict with that of the Commonwealth." *Id.* (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)). We will not disturb the jury's judgment unless it is "plainly wrong or without evidence to support it." *See* Code § 8.01-680. "If there is

- 7 -

evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Commonwealth v. Perkins*, 295 Va. 323, 327-28 (2018) (per curiam) (quoting *Courtney v. Commonwealth*, 281 Va. 363, 368 (2011)). In conducting this review, the "appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (emphasis added) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

It is also the function of the trier of fact, in this case the jury, to "determin[e] the credibility of the witnesses and the weight afforded the testimony of those witnesses." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). In conducting such evaluations, the fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc)). "This Court does not revisit these determinations on appeal unless reasonable people, 'after weighing the evidence and drawing all just inferences therefrom, could reach [only the contrary] conclusion.'" *Davis v. Commonwealth*, 79 Va. App. 123, 148 (2023) (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). Finally, evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Bagley*, 73 Va. App. at 26-27 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).

In this case, a large quantity of drugs—fentanyl, methamphetamine, cocaine, and psilocybin—was found in the Richmond apartment. The drugs were in a locked safe and two containers with false bottoms (a drink-mix canister and a paint can). The appellant contends the Commonwealth did not prove that he possessed these drugs.

The legal parameters regarding the possession of illegal drugs are clear. Possession of contraband may be actual or constructive. *Id.* at 27 (citing *Smallwood v. Commonwealth*, 278 Va. 625, 629-30 (2009)). Constructive possession can be established by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Id.* (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). Although mere "proximity to [drugs] or ownership or occupancy of the premises where [drugs are] found" is not enough to prove constructive possession, "these are circumstances probative of possession and may be considered as factors in determining whether the defendant possessed" the drugs. *See Rawls v. Commonwealth*, 272 Va. 334, 350 (2006). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual [question]' left to the trier of fact, not the appellate court." *Bagley*, 73 Va. App. at 28 (first alteration in original) (quoting *Smallwood*, 278 Va. at 630).

We hold that the evidence admitted at trial was sufficient under the applicable legal standard to prove the appellant constructively possessed the drugs in the Richmond apartment.

That evidence proved that the appellant accessed the key-controlled door to the Richmond apartment building on several occasions and was seen at least a few times going in and out of apartment 104. At least twice when he left the apartment, he turned toward the handle and appeared to lock the door behind him. Although a second man was present on some of those occasions, the appellant was the person who turned toward the door handle when departing, and no evidence suggested that the other man had independent access to the apartment.

Further, although the apartment was leased to someone else, numerous personal items bearing the appellant's name were found inside it, including his high school diploma from 2005, a skydiving certificate dated 2019, a laptop computer, and several pieces of mail. The mail was addressed to him at various other locations on dates spanning seven years to a mere five weeks before the April 2020 search. An empty box addressed to the appellant at the Richmond apartment was found on the kitchen counter near the gelatin capsules and pill press found in a cabinet. Two empty boxes addressed in the same fashion were found in the master bedroom closet near two presses used to compact drug material. Beside the presses in the closet were a firearm and the case for a second firearm, both of which the appellant had purchased about six months before the search. *See Brown v. Commonwealth*, 15 Va. App. 1, 9 (1992) (en banc) ("[T]he finder of fact may infer from the value of [an item] found on premises . . . that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control."). The only items found in the apartment linking anyone else to it were a receipt, in the name of Ferraud Francis for the rental of a local storage unit, and some women's shoes.

Additional evidence supporting a finding that the appellant constructively possessed the drugs was the large amount of cash and firearm-related evidence on his person and in his car, as well as in his Chesterfield residence. The appellant had $7,320 on his person, as well as a Glock firearm with an extended magazine in the car door pocket beside him, and an additional $13,000 in the center console. At his Chesterfield residence, he had $85,000 in cash and the boxes for two additional firearms. *See Brown v. Commonwealth*, 68 Va. App. 517, 527 (2018) (observing that "[t]he relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is . . . well recognized" (second alteration in original) (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 445 (1994) (en banc))). Finally, a false-bottomed container found in his Chesterfield residence was similar to the two false-bottomed containers with the large

quantities of drugs found in the Richmond apartment, providing further circumstantial evidence that he was aware of the presence of that contraband.

The appellant points to his claim that he no longer had independent access to the Richmond apartment and came to the building only to get his mail from outside it. He further alleges that he had reported the firearms in the apartment closet stolen. Finally, he suggests that he had access to large amounts of cash due to work he performed for Brown. The jury, however, was entitled to accept the Commonwealth's evidence and conclude that the specific testimony of the appellant and Brown, which was not supported by a police report or wage records, was fabricated to "conceal [the appellant's] guilt." *See Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010) (quoting *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008)); *accord Rawls*, 272 Va. at 350. Given the appellant's strong ties to the Richmond apartment, as established by the items found there bearing his name and the presence of minimal evidence linking anyone else to it, the fact that the lease was not in his name did not prevent a finding that he constructively possessed, at least jointly, the huge quantity of drugs found there. *See Smallwood*, 278 Va. at 630 (observing that the possession of contraband need not be exclusive to support a conviction).

The record supports the jury's findings that the appellant was aware of the presence and character of the narcotics and that they were subject to his dominion and control. The evidence is therefore sufficient to prove that the appellant constructively possessed the drugs found in the Richmond apartment.

## II. Post-Trial Motion

The appellant contends that the trial court erred by denying his motion to set aside the verdict and for a new trial. This is so, he suggests, because Detective Sprouse's alteration of the unrelated search warrants, along with the detective's subsequent filing of the altered returns for those warrants, was material impeaching information to which the appellant was entitled pretrial.

On review of an exculpatory evidence claim, "the burden is on [the] appellant to show that the trial court erred." *Gagelonia v. Commonwealth*, 52 Va. App. 99, 112 (2008) (quoting *Galbraith v. Commonwealth*, 18 Va. App. 734, 739 (1994)). This Court "review[s] the trial court's findings of historical fact only for 'clear error'" but considers its "application of defined legal standards to the particular facts of [the] case" de novo. *Castillo v. Commonwealth*, 70 Va. App. 394, 466 (2019) (quoting *Doss v. Commonwealth*, 59 Va. App. 435, 455 (2012)).

The current challenge must be evaluated in light of well-established legal precedent. In *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent decisions, the United States Supreme Court held that the prosecution must disclose to the defendant "all favorable evidence material to his guilt or punishment." *Garnett v. Commonwealth*, 275 Va. 397, 406 (2008). Establishing a *Brady* violation requires proof of three components. *Workman v. Commonwealth*, 272 Va. 633, 644 (2006). First, "[t]he evidence not disclosed . . . 'must be favorable to the accused, either because it is exculpatory[]' or because it may be used for impeachment." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Second, the evidence "must have been suppressed by the [Commonwealth], either willfully or inadvertently, thereby denying [the] defendant its use at trial." *Mercer v. Commonwealth*, 66 Va. App. 139, 146 (2016). Third, the nondisclosure must have prejudiced the defendant. *Id.* A failure by the defendant, in the circuit court, to establish any one of these three components requires a denial of the claim. *See Commonwealth v. Tuma*, 285 Va. 629, 635 (2013).

The appellant challenges the trial court's rulings that he did not satisfy the second and third components of the *Brady* test. We hold the appellant failed to establish prejudice under the third component and resolve the appeal on this basis alone.[6]

---

[6] In light of this Court's duty "to decide cases 'on the best and narrowest ground available,' we offer no opinion on" the other two components of the *Brady* analysis because "[t]he absence of prejudice, by itself, defeats [the appellant's] claim and renders all other issues

The linchpin in determining prejudice under the third component is whether the absent evidence was "material." *Hicks v. Dir., Dep't of Corr.*, 289 Va. 288, 299 (2015). Evidence is "material" under *Brady* if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Tuma*, 285 Va. at 634-35 (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). The United States Supreme Court has "stressed" that "'[t]he adjective ["reasonable"] is important.'" *Strickler*, 527 U.S. at 289 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). A *reasonable* probability does not mean that "the defendant would more likely than not have received a different verdict with the evidence." *Kyles*, 514 U.S. at 434; *see Garnett*, 275 Va. at 406. Instead, the question is whether in the absence of the evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hicks*, 289 Va. at 299 (quoting *Workman*, 272 Va. at 645). "The mere *possibility* that an item of undisclosed information might have helped the defense[] or . . . affected the outcome of the trial[] does not establish 'materiality' in the constitutional sense." *Johnson v. Commonwealth*, 53 Va. App. 79, 106 (2008) (emphasis added) (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

Importantly, for purposes of a *Brady* analysis, "materiality is not a sufficiency of the evidence test." *Workman*, 272 Va. at 645. It does *not* require proof that, "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* (quoting *Kyles*, 514 U.S. at 434-35). Instead, "the court must take into consideration the use the defense may properly make of the non-disclosed information." *Bly v.*

---

analytically superfluous." *See Deville v. Commonwealth*, 47 Va. App. 754, 758 (2006) (citation omitted) (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 171 n.3 (2005) (en banc)). For similar reasons, in analyzing the prejudice/materiality component, we do not opine on the admissibility of the impeachment evidence to attack Detective Sprouse's credibility. We simply assume it was admissible for that purpose. *See Soering v. Deeds*, 255 Va. 457, 464-65 (1998) (assuming evidence was admissible and holding it was not material for *Brady* purposes).

*Commonwealth*, 280 Va. 656, 663 (2010); *see Kyles*, 514 U.S. at 436 (noting that "suppressed evidence [must be] considered collectively, not item by item"). "At the heart of this inquiry is a determination whether the evidence favorable to the defendant could reasonably be considered as placing the entire case in such a different light that confidence in the verdict is undermined." *Lovitt v. Warden*, 266 Va. 216, 244 (2003); *see Kyles*, 514 U.S. at 435.

Here, the evidence supports the trial court's finding that Detective Sprouse, in an unrelated drug case, transferred information contained in the affidavits into the appropriate blanks on the search warrants that had already been issued. That information (the thing to be searched for—drugs) was accurate and had simply been inadvertently omitted from the unrelated warrants. The trial court therefore did not err by finding that the impeachment value of the detective's actions regarding the unrelated warrants was minimal. That evidence, at best, would have permitted general impeachment of his credibility at trial.[7]

The appellant, relying in part on *Bly v. Commonwealth*, 280 Va. 656 (2010), suggests that the evidence impeaching Detective Sprouse could have cast doubt on the detective's claim that the appellant had access to the Richmond apartment during the time at issue.[8] *Bly*, however, is readily distinguishable. Here, the prosecution's case against the appellant might have been weaker if Sprouse's credibility had been attacked with the undisclosed information, but it would not have been "markedly weaker." *See Kyles*, 514 U.S. at 441. Unlike the *Brady* evidence in this case, the *Brady* evidence in *Bly*, 280 Va. at 658-60, related *directly* to the crime for which the defendant was on trial, contradicting the key witness on his identification of the defendant as

---

[7] The appellant does not challenge the issuance of the warrants executed in his case. He argues only that he was entitled to explore the detective's credibility in front of the jury.

[8] The appellant does not specifically challenge the impact of the impeachment of Sprouse on the testimony the detective gave as an expert. As a result, we do not consider any possible impact on appeal. *See* Rules 5A:18, 5A:20(e).

- 14 -

the perpetrator. *Accord Kyles*, 514 U.S. at 441-44, 454; *Workman*, 272 Va. at 646-50. As a result, the potential impact of the impeachment evidence in the appellant's case was slight by comparison. *See Lemons v. Commonwealth*, 18 Va. App. 617, 620 (1994) (holding that a mere "lessen[ing of] confidence in the outcome" does not meet the materiality standard).

Further, even if Detective Sprouse had been impeached at trial based on his alteration of the unrelated warrants, a great deal of additional evidence in the appellant's case proved what was established by the most important pieces of the detective's testimony. First, three other witnesses tied the appellant to the building—Officer Hopkins; one of the appellant's witnesses, Quinton Claiborne; and the appellant himself. Second, tying the appellant to the specific apartment were both the appellant's unchallenged testimony that he dated the leaseholder for two years and the significant number of his belongings found inside it pursuant to the unchallenged search warrant executed by officers other than Detective Sprouse. In fact, the appellant admitted he had slept at the apartment. He also admitted storing his belongings and receiving mail there.

Third, although the appellant claimed he no longer had access to the inside of the apartment during the period of police surveillance, a significant number of his personal belongings remained there with the illegal drugs and distribution material. *See Cornell*, 76 Va. App. at 31 (recognizing that the fact finder can credit parts of a witness's testimony and reject others). Most importantly, one of those items tied the appellant to the inside of the apartment roughly contemporaneously with the search. That item was a packet of Amtrak employee benefits information addressed to the appellant at his Chesterfield address and dated March 11, 2020, just five weeks before the police search of the apartment. Although the appellant testified at trial, he did not deny transporting that piece of mail from his Chesterfield residence to the Richmond apartment or attempt to provide any other theory, in testimony or argument, regarding how it might have arrived there. Separate from Detective Sprouse's surveillance and related

- 15 -

testimony, therefore, the physical evidence in the Richmond apartment supported a finding that the appellant still in fact had access to the apartment's interior.  *See Strickler*, 527 U.S. at 293 (recognizing "considerable . . . physical evidence linking" the defendant to the crime).

Other physical evidence available to the jury also connected the appellant to the Richmond apartment and the large quantity and variety of drugs and distribution paraphernalia found inside.  That evidence included the amount of money he had on his person, in his car, and at his Chesterfield residence—$105,000 in cash.  Although the appellant presented testimony that he earned significant sums from work for his former stepfather and that he carried cash with which to buy used cars for resale, the only documentation of earnings he produced concerned his employment with Amtrak.  Those documents showed income of about $51,000 in 2018 and $43,000 in 2019.  Further, the appellant testified that he was the "sole" financial provider for his three children.  All of these facts, taken together, made it far less credible that he had amassed, from legitimate employment, the $105,000 in cash he had in his actual and constructive possession at the time of the searches.

Based on this record, the evidence impeaching Detective Sprouse's credibility on minor issues in an unrelated case did not establish a "reasonable probability" of a different outcome for the appellant.  *See Tuma*, 285 Va. at 634-35 (quoting *Smith*, 565 U.S. at 75).  The discovery of that impeachment evidence simply does not "undermine[] confidence in the outcome of the trial."  *See Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).[9]

---

[9] The appellant suggests that he might have chosen not to testify if he had known about Sprouse's misconduct prior to trial and that this is a factor for consideration in the materiality inquiry.  Defense counsel, however, did not make this specific argument in the trial court.  As a result, we do not consider it on appeal.  *See* Rule 5A:18; *Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019).  *See generally Mercer*, 66 Va. App. at 149 (recognizing that although "a different trial strategy may, with hindsight, possibly have been more efficacious, the mere possibility that an alternate trial strategy *might* produce a more beneficial result is not the proper test for a *Brady* violation"), *quoted with approval in Church v. Commonwealth*, 71 Va. App. 107, 118-19 (2019).

Consequently, we hold the appellant did not meet his burden of proving that the evidence impeaching Detective Sprouse was material and therefore prejudicial in the sense required to establish a *Brady* violation.

## CONCLUSION

The evidence was sufficient to prove the appellant constructively possessed the drugs in the Richmond apartment. Further, the appellant failed to prove that the impeachment evidence about Detective Sprouse was material and prejudicial under *Brady*. As a result, we affirm the appellant's convictions.

*Affirmed.*