# COURT OF APPEALS OF VIRGINIA

## Record No. 0681-25-2

SHAMON MARQUIS SPAIN
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Beales, O'Brien and Ortiz
Argued at Richmond, Virginia

Opinion Issued May 19, 2026[*]

**FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY**
Steven C. McCallum, Judge

Gregory R. Sheldon (Bain Sheldon, PLC, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

**MEMORANDUM OPINION BY
JUDGE MARY GRACE O'BRIEN**

Following a jury trial, the circuit court convicted Shamon Marquis Spain of felony murder, felony eluding, and felony hit and run. On appeal, Spain argues that the evidence failed to prove he was driving the vehicle at the time it collided with the victim's car. He further contends that the court erred by denying his motion for a new trial based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree and affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND

"On appeal, we state the facts 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" *Allison v. Commonwealth*, 73 Va. App. 414, 415 (2021) (quoting *Mitchell v. Commonwealth*, 73 Va. App. 234, 239 (2021)). "In doing so, we discard any of the appellant's conflicting evidence[] and regard as true all credible evidence favorable to the Commonwealth." *Id.* at 415-16 (quoting *Moreno v. Commonwealth*, 73 Va. App. 267, 271 (2021)).

On July 28, 2022, Chesterfield County Police Officer Jonathan White responded to a call concerning the theft of a red Dodge pickup truck, possibly involving three suspects. Officer White saw the truck and activated his patrol car's lights and siren to initiate a traffic stop. The truck accelerated, leading to a chase. Officer White briefly lost sight of the truck and then received a report that it had crashed into another vehicle. The driver of that vehicle died from blunt force injuries.

Officer White arrived at the scene 10 to 15 seconds after the crash and saw the truck with heavy front-end damage stopped in the roadway. He saw a man exit through the driver's door, run around the truck, and flee; Officer White did not see anyone else running from the scene. Officer Taylor Sensabaugh, who was also involved in the chase, likewise testified that he saw only one person exit the truck and flee. A K-9 unit tracked the suspect a short time later and took him into custody. The man, identified as Spain, had lacerations on his arms and lower back.

Police searched the stolen truck and found bloodstains on the deployed driver's side airbag. Dr. Changsuk Oh with the Virginia Department of Forensic Science (DFS) conducted DNA testing on these bloodstains and determined that Spain was the likely source. When searching the truck, police also found a shoe on the driver's side floorboard.

At trial, Spain admitted that he was in the stolen truck at the time of the crash, but he claimed that he had been riding in the backseat and had to exit through the driver's door due to the

- 2 -

damage the truck sustained. He testified that two other men, Melvin Watts and Montrel Epps, had also been in the car but fled the scene after the crash. According to Spain, Watts had been driving, and Epps had been in the front passenger seat. Spain also admitted losing a shoe in the car but claimed it occurred as he climbed through the driver's compartment. The jury found Spain guilty of all charges.

Trial was in April 2024. In October 2024, Spain filed a motion to set aside the jury's verdict, arguing that the Commonwealth committed a *Brady* violation by not informing him before trial that Dr. Oh had failed a proficiency test.[2] The motion indicated that the Commonwealth had provided the information while the jury was deliberating.

In its response, the Commonwealth attached documentation from DFS showing that after the failed test, DFS reviewed Dr. Oh's work from the prior six months and found "[n]o issues." The review concluded, "Although it is not possible to determine unequivocally the root cause [of the failed test], it is suspected, after a thorough investigation, that one of the manufactured plastics" used during the test "may have contained a contaminant DNA source." A review of the DFS file from Spain's case also revealed "no issues"; specifically, DFS found no contamination or other inconsistencies and determined that Dr. Oh had followed all proper procedures and documentation requirements. Additionally, DFS reported that Dr. Oh had passed the twice-yearly proficiency tests he had taken in 2022 and 2023. He resumed all casework duties in June 2024 after completing a return-to-work competency test.

In ruling on the motion, the court first noted that Dr. Oh had performed the DNA testing in Spain's case in 2023, more than a year before DFS removed him from casework due to the failed proficiency test. Nevertheless, the court agreed with Spain on two points: the Commonwealth had

---

[2] The record does not specify the precise date of Dr. Oh's failed test but does indicate that DFS took him off casework on or around March 25, 2024.

withheld the information and the information was favorable to Spain as impeachment evidence. The court concluded, however, that Spain failed to prove he had been prejudiced and that other "overwhelming" evidence showed Spain was the driver. The court denied the motion, and Spain now appeals.

ANALYSIS

I. Sufficient Evidence of Identity

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). We "affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257); *see* Code § 8.01-680.

Spain asserts that the circumstantial evidence presented at trial was insufficient to establish that he was the driver of the truck at the time of the fatal collision. "At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's

determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

When considering a sufficiency challenge, we have held that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "As with any element of an offense, identity may be proved by direct or circumstantial evidence." *Smith v. Commonwealth*, 85 Va. App. 435, 456 (2025). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (alteration in original) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "[I]n a circumstantial evidence case . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Id.*

Here, the evidence was sufficient to prove that Spain was the perpetrator. Officer White arrived at the crash scene just seconds after the fatal collision. He saw Spain exit through the driver's door, run around the truck, and flee the scene. Officer White saw no one else get out of or run from the truck. Officer Sensabaugh also saw only one person exit the truck and flee. The truck's rear doors were closed, Spain's shoe was found on the driver's side floorboard, and blood

was on the driver's side airbag, from which it was reasonable for the jury to infer that Spain was in the driver's seat during the crash, sustained injuries, and bled onto the airbag.

Spain insists the Commonwealth failed to prove he was the driver because of "unrefuted evidence" that three suspects were being investigated at the time of the crash and the responding officers lost sight of the truck for some period time. According to Spain, it is just as likely, if not more likely, that one of the other individuals was driving and that both fled without police noticing. We disagree. Although the police officers were responding to a larceny report involving three suspects, no credible evidence established that anyone but Spain was in the truck at the time of the crash; the only source of evidence supporting Spain's theory came from his own testimony, which the jury was free to disbelieve. *Bennett v. Commonwealth*, 84 Va. App. 607, 620 (2025) (allowing a jury to "disbelieve the self-serving testimony of the accused and to conclude that [he] is lying to conceal his guilt" (alteration in original) (quoting *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022))).

The jury permissibly rejected Spain's hypothesis that someone else was driving and the two other men fled in the few seconds Officer White lost sight of the stolen truck. Thus, the record supports the jury's conclusion that Spain was the truck's driver and caused the fatal collision. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Spain was guilty of felony murder, felony eluding, and felony hit and run.

II. *Brady* Claim

Spain argues that the court erred in denying him a new trial based on the Commonwealth's failure to disclose material favorable evidence as required by *Brady v. Maryland*, 373 U.S. at 87. Specifically, Spain contends that the Commonwealth violated *Brady* by

"fail[ing] to disclose the fact that its expert had recently failed a proficiency test, was being investigated as a result, and was not then handling any casework."

In the context of an alleged *Brady* violation, "[w]e review the trial court's findings of historical fact only for 'clear error,' but we review *de novo* the trial court's application of defined legal standards to the particular facts of a case." *Castillo v. Commonwealth*, 70 Va. App. 394, 466 (2019) (quoting *Doss v. Commonwealth*, 59 Va. App. 435, 455 (2012)).

A *Brady* violation has three components:

> (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it impeaches a witness regarding a material fact; (2) that evidence must have been suppressed by the State, either willfully or inadvertently, thereby denying a defendant its use at trial; and (3) prejudice must have ensued.

*Mercer v. Commonwealth*, 66 Va. App. 139, 146 (2016); *see Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "The accused has the burden of establishing each of these three components to prevail on a *Brady* claim." *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019) (quoting *Mercer*, 66 Va. App. at 146).

With regard to prejudice, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Bly v. Commonwealth*, 280 Va. 656, 662 (2010) (quoting *Workman v. Commonwealth*, 272 Va. 633, 645 (2006)). "In the context of *Brady*, prejudice is shown if the nondisclosed evidence favorable to the accused is material." *Garnett v. Commonwealth*, 49 Va. App. 524, 534 (2007). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Commonwealth v. Tuma*, 285 Va. 629, 634-35 (2013) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). A reasonable probability is "a probability sufficient to undermine confidence in the

outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Guided by these principles, we find that disclosure of the information withheld from Spain raises only a possibility, not a reasonable probability, that the result of the proceedings would have been different. As such, the information was not material, and thus no prejudice has been shown.

Although Dr. Oh's DNA analysis and testimony tended to show that Spain's blood was on the driver's side airbag and, therefore, that he was in the driver's seat, other evidence in the record was sufficient to establish these facts beyond a reasonable doubt. Multiple officers testified that they saw Spain fleeing from the driver's compartment of the truck seconds after the crash and saw no one else leaving the truck. Spain's shoe was found on the floorboard of the driver's seat. Spain himself did not contest that he was in the driver's seat at some point, claiming he only crawled there from the backseat to escape after the crash.

Pictures of the bloodstained airbag were admitted into evidence independently of Dr. Oh's DNA analysis and testimony. Considering that Spain sustained lacerations in the crash, a jury could reasonably infer that it was Spain's blood on the airbag, even without forensic expertise. *See Turner v. Commonwealth*, 218 Va. 141, 147-48 (1977) (affirming murder conviction based on circumstantial evidence despite inconclusive analysis of blood on murder weapon). Dr. Oh's DNA testing was cumulative of other evidence in the record establishing that Spain was in the driver's seat. This evidence—coupled with the fact that the responding officers saw no one else flee from the stolen truck and the fact that no one else was left in the truck— provided a sufficient basis for the jury to reach the ultimate conclusion that Spain was actually driving at the time of the collision. Clearly, Dr. Oh's testing was not the exclusive or indispensable basis for this ultimate conclusion. Therefore, even if Dr. Oh's testimony had been

impeached by the failed proficiency test, there is no reasonable probability that the jury's verdict would have changed.[3]

The record before us contains overwhelming evidence that Spain was driving at the time of the crash, and the DNA test results were of little probative value. Spain failed to establish any prejudice resulting from the late disclosure of the evidence, and he therefore failed to establish a *Brady* violation. Accordingly, the court did not err by denying the motion to set aside the verdict and refusing to grant a new trial.

CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*

---

[3] Spain does not proffer any substantive flaw in Dr. Oh's analysis in this case, and we note that DFS found no issues in Dr. Oh's work on this or other cases. Further, DFS found that Dr. Oh had adhered to all correct procedures and documentation requirements for this case. He had passed proficiency tests in other years—including 2023 when he performed the DNA analysis in this case—and returned to his normal work duties after successfully completing a competency test.